**STATE of Missouri,
Plaintiff–Respondent,**

**v.**

**Calvin BEBERMEYER,
Defendant–Appellant.**

**No. 52231.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 24, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 7, 1988.

Application to Transfer Denied
Feb. 17, 1988.

Wayne T. Schoeneberg, St. Charles, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty by a jury of possession of cocaine and sentenced to a term of 10 years' imprisonment. He appeals; we affirm.

On January 24, 1986, four law enforcement officers went to the Hawk Point mobile home of Tim Crowl and Adrienne Lucero to execute a search warrant. Upon arriving at the trailer, Lincoln County chief deputy sheriff Roy Gilbert observed Crowl through a kitchen window holding a glass vial over a flame on the kitchen stove. Crowl was shaking the vial which contained a white substance. Standing next to Crowl was defendant and Lucero was standing behind them.

When deputy sheriff James Johnson knocked at the door and identified himself, he heard someone inside say "it was the cops" and he heard rapid footsteps going toward the rear of the trailer. When Crowl opened the door, he tried to prevent Johnson from entering. When officers entered, Lucero was in the living room and defendant was in the bathroom "toward the back of the trailer." After the three were arrested, officers searched defendant and removed a small glass vial or test tube containing a white powdery substance from his right front trousers pocket, an oval black mirror with a white powder residue on it from a rear trousers pocket, and his billfold from the other rear pocket. A subsequent search of defendant's billfold revealed a white paper packet containing a white powdery substance. Near a couch in the living room officers found a package containing 13.70 grams of a white powdery substance. The white powdery substances in the vial, in the packet taken from defendant's billfold, and in the package found near the couch were determined to be cocaine.

Defendant testified that when the officer knocked on the door, Crowl handed him the vial, the mirror, the packet found in his wallet, and some other things. He denied knowing that the vial and packet contained cocaine.

During defendant's voir dire, more than 20 members of the panel indicated they believed that defendant should offer evidence to prove his innocence or that they would want to hear his side of the story. At the end of defendant's voir dire the

prosecutor asked no more questions but the court questioned the jury as follows:

THE COURT: All right, thank you. The Court wants to inquire of you, just a couple questions. Counsel on both sides have a right to ask you questions and the Court has a right to inquire, and when I first gave you some of my opening remarks, I gave you one instruction of the Court and then I asked you a question; I asked whether or not you could follow the court's instructions as the court would give it to you.

Some of your responses to both of the attorneys today may indicate that you can't follow the instructions that I give you, and for that reason I feel compelled to ask you certain questions.

Counsel on both sides gave you a general statement on certain areas of the law, and the law in a criminal case, as I gave you an instruction, is that the Defendant is presumed innocent. That's what the law in the State of Missouri is, until such time as the State proves his guilt beyond a reasonable doubt. That burden is on the State and they must prove evidence that comes to the witness stand, or by documents or other evidence before you, to prove to you beyond a reasonable doubt. That's what the law is.

The case can stop right there. The Defendant has a right to just sit there and remain silent, because he has no burden. Now, is there anyone that doesn't understand that law as the Court gave it to you earlier? Is there anyone who can't follow that instruction as I mentioned to you earlier? The idea is for you to sit here—the twelve of you who are selected, as twelve fair and impartial people.

Now, all of us have feelings about certain crimes. All of us—most of us, I would hope, are opposed to all crimes, but that shouldn't disqualify us to sit as a juror just because we don't like a particular crime. We don't like murder, we don't like cocaine, we don't like rape, whatever it may be. That shouldn't disqualify us to sit as a juror just because of that.

The question is: Whether or not you can sit and listen to the evidence, and from the evidence, determine whether or not the Defendant is guilty beyond a reasonable doubt just from that evidence. If they fail to present that evidence, then I have instructed you earlier, that he's not guilty, he doesn't have to present anything and he has a right to make the State do that. All of us have that right, to make them prove beyond a reasonable doubt. Now, can you follow that instruction? Some of you said, you know, you would like to hear everything. Sure, we would all like to hear everything—

At this point defendant's counsel objected to the court's questioning. Following a conference out of the hearing of the jury, the court overruled defendant's objection and then continued:

THE COURT: As I was mentioning, many of you made a comment that you would like to hear both sides, and that may be true, but do you understand that you don't have to hear both sides. The Defendant doesn't have to—that's our law. Now, my question to you is: Whether or not there's anyone on this panel who feels that they can't sit as a fair and impartial juror from this community and listen to the evidence that's presented and make a determination of guilt or innocence just from that evidence? Is there anyone who feels that they can't be fair and impartial and listen to that evidence and make a determination just from that evidence that's presented?

Now, some of you raised your hand earlier, so this is the time to tell me, because I'm going to assume by your silence that all of you feel that you are fair—can be fair and impartial and listen to the evidence and you will not use the defendant's silence as evidence against him, because that's what our constitution says, that you cannot use it against him, you are to base it on the evidence that's presented from the stand, and if he wants to or doesn't want to, that's his choice and his right. All right. I'm going to assume, then, by your silence that

all of you can be fair and impartial jurors and base your decision strictly on the evidence that is presented.

Defendant challenged for cause the jurors who had indicated they would require defendant to put on some evidence. The trial court overruled the objection.

Defendant's principal complaint is that the court erred in not sustaining his challenge for cause of the jurors who stated on voir dire they had strong feelings about defendant's obligation to put on evidence. He also contends the court erred in giving an "extemporaneous, oral instruction to the jury during voir dire in that the comments were confusing, and highlighted certain instructions while deviating from the approved criminal instructions of the supreme court."

We approach our analysis of defendant's complaints with some general propositions of law in mind. A defendant is presumed to be innocent in a criminal proceeding. *See State v. Wilfong,* 438 S.W.2d 265, 266 (Mo.), *cert. dismissed* 396 U.S. 995, 90 S.Ct. 496, 24 L.Ed.2d 460 (1969). The burden of proof is upon the state to prove guilt beyond a reasonable doubt. *State v. Bailey,* 645 S.W.2d 211, 212 (Mo.App.1983). A defendant is not required to present any evidence and the state is not entitled to comment on a defendant's failure to testify. *State v. Lindsey,* 578 S.W.2d 903, 904 (Mo. banc 1979).

■ An accused is entitled to a full panel of qualified jurors before he is required to expend his peremptory challenges; denial by the trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. Reynolds,* 619 S.W.2d 741, 749 (Mo.1981).

■ The trial court has broad discretion in determining the qualifications of a potential juror and should be reversed only for an abuse of discretion. *State v. Roberts,* 604 S.W.2d 765, 767 (Mo.App.1980). The appellate court must judge each case on its own particular facts. *Reynolds,* 619 S.W.2d at 749. The qualifications of a juror are not conclusively determined by an initial response to a question; that determi-

nation is to be made based on the entire examination. This standard is frequently applied to jurors' responses to questions concerning their preconceived or self-formed conceptions of legal principles to be followed such as the weight to be given the testimony of a police officer, a defendant's exercise of Fifth Amendment rights, and a presumption of innocence. If, after further questioning or explanation, jurors indicate an ability to follow applicable principles of the law, the trial court then may determine the qualifications of the jurors. Because of its ability to observe the reaction and demeanor of the jurors, doubt is resolved in favor of the trial court's determination, and the trial court will be found in error only if there has been a clear abuse of discretion. *State v. Garrett,* 595 S.W.2d 422, 431 (Mo.App.1980). If a potential juror gives equivocal responses and counsel do not attempt to clarify the answers, the trial court must do so. *State v. Hunt,* 663 S.W.2d 336, 338 (Mo.App.1983).

■ Initially we note that the court did not err in its remarks to the jury during voir dire. *State v. Cross,* 594 S.W.2d 609 (Mo. banc 1980) does not control. Defendant here has not indicated in what way the court erroneously informed the jurors of the law and, in fact, the court's comments properly stated the law. We find no error in the court's statements.

However, the issue remains whether the court abused its discretion in failing to sustain defendant's challenges for cause. Defendant principally relies upon the supreme court case of *State v. Holland,* 719 S.W.2d 453 (Mo. banc 1986); *State v. Stewart,* 692 S.W.2d 295 (Mo. banc 1985); *State v. Scott,* 482 S.W.2d 727 (Mo. banc 1972); and our case of *State v. Carter,* 544 S.W.2d 334 (Mo.App.1976) to support his contention that the court prejudicially erred in failing to sustain his challenges for cause. In these cases, the courts noted the failure of the trial courts to adequately clarify the law or to interrogate the prospective jurors. In fact, these cases suggest that if counsel fail to ask questions to clarify equivocal answers, the court has a duty to

inquire. *See, e.g., Holland,* 719 S.W.2d at 455.

From our review of the questions asked by the court and the jurors' responses, we conclude the trial court did not abuse its discretion in overruling defendant's motion to excuse the challenged jurors for cause. The jurors indicated that they understood the state had the burden of proof and that the defendant had the right to remain silent. They understood that the state had to prove defendant guilty beyond a reasonable doubt, and if the state failed to present sufficient evidence and defendant presented no evidence, the defendant must be found not guilty. They understood they did not have to hear both sides and indicated they could make a fair determination on the evidence presented.

If the jurors had been asked individually the questions the court asked them as a group and the jurors individually had given the same answers that the entire panel made, we would not have found an abuse of discretion in the court's failure to sustain defendant's objections for cause. Having made that determination, what is the effect of the manner in which the court asked the questions and received the responses?

The trial court in *Garrett* questioned the jury in much the same manner as the court did here.

> Appellant's counsel opened his examination with a series of remarks and questions, in the nature of remarks, related to the presumption of innocence. Compare *State v. Cheesebrew,* 575 S.W.2d 218 (Mo.App.1978). He then asked the jurors who presumed the appellant to be innocent to raise their hands. Only ten did and on that basis the appellant challenged the entire panel. The court then instructed the jury that the law presumes every defendant innocent. The court then asked those willing to follow

> that presumption to raise their hands and all the jurors did so. The challenge was overruled.... [A]fter an explanation of the presumption each juror without reservation signified an ability to abide by the presumption. The action of the trial court in overruling the challenge was not error.

*Garrett,* 595 S.W.2d 430–31. This procedure was approved by us in *State v. Taylor,* 643 S.W.2d 14 (Mo.App.1982). Judge Gunn, speaking for the court, stated, "[T]he trial court's remarks to the panel clarifying the law and questioning the jurors served to resolve any problems with the voir dire testimony." *Id.* at 17.[1]

◼ The trial court did not err in failing to sustain defendant's challenge for cause. Nor was it error to fail to sustain defendant's objections because some of the jurors had strongly held opinions about cocaine. We note that jurors are not to be disqualified because they have strong views on the crimes charged if they indicate they can follow the law and be fair. *State v. Evans,* 701 S.W.2d 569, 573 (Mo.App.1985). In light of the court's explanation and the jurors' responses there is no error on this issue.

Defendant also contends the court erred in admitting into evidence state's exhibit 11A, the 13.70 gram package of cocaine found near the couch in the mobile home. Although he denied having seen the package prior to trial, defendant admitted that he had been sitting in a chair close to the couch where the bag was found.

◼ Defendant contended at trial that he did not know he was possessing cocaine. We believe that evidence of certain circumstances related to the arrest was admissible including testimony that defendant was standing next to Crowl while Crowl held the vial over the stove, that a large amount of cash was found in defendant's billfold, and that there was a large amount of cocaine found near where defendant had been

1. The western district court of appeals in circumstances similar to those now before us reached a result contrary to ours in this case and to *Garrett* and *Taylor. State v. Byrd,* 646 S.W.2d 419 (Mo.App.1983). It appears the western district held that the trial court should have individually questioned the jurors rather than as a group. We agree that individual interrogation might have been a better practice in this case; however, it is accepted practice that counsel and the court may interrogate a jury panel as a whole and receive responses from the panel as a group. We find no indictment of this practice.

sitting. All this evidence was admissible to show defendant's knowledge that he possessed cocaine in his billfold and on his person. *See State v. Arbeiter*, 664 S.W.2d 566, 569 (Mo.App.1983).

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.