**STATE of Missouri, Respondent,**

v.

**Anthony A. STAMPS, Appellant.**

No. 62936.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 16, 1993.

Andrea Harbin, St. Charles, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Appellant, Anthony Stamps, appeals his jury conviction of driving while intoxicated in violation of Section 577.010 R.S.Mo.1986. Appellant was sentenced as a persistent offender to four years imprisonment. § 577.-023 R.S.Mo.Cum.Supp.1992.

On appeal, appellant claims the trial court erred in: (1) failing to strike a juror for cause which violated his right to a fair trial; (2) allowing a witness to testify because the state did not endorse the witness until the morning of the trial and did not provide defense counsel with the witness's statement; and (3) admitting testimony based on a police

report that violated the hearsay rule. Further, appellant contends the trial court plainly erred in: (1) submitting an instruction patterned after MAI–CR3d 333.00 defining an intoxicated condition as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof" because the instruction was a material and prejudicial variation from the charge contained in the state's information and constituted a new offense thus violating appellant's rights to due process and a fair trial; and (2) submitting an instruction patterned after MAI–CR3d 302.04 because the instruction's definition of "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of defendant's guilt" violated his right to due process of law. We affirm.

The sufficiency of the evidence is not in dispute. The evidence viewed in a light most favorable to the verdict reveals the following. On May 31, 1991, appellant visited a hospital where he was diagnosed with acute pharyngitis and secondary bronchitis. Appellant was prescribed Phenergan and Tylenol. Appellant took these medications one to four times daily from May 31 to June 3. On June 3, at approximately 8:30 p.m., Deputy Sheriff Maylee was driving a patrol vehicle on a highway and Deputy Sheriff Suchland was his passenger. The deputies observed a pickup truck (truck) approaching them exceeding the speed limit. Appellant was driving the truck and he was alone. The deputies turned around and followed the truck and saw it travel on the center line. Maylee stopped the truck, the deputies approached the truck, and Maylee asked appellant for his operator's license. Appellant indicated that he did not have his license in his possession, and Maylee asked appellant to exit the truck. Appellant strongly smelled of alcohol, was staggering, slurred and stuttered his speech, and his eyes were glassy and watery. Maylee tested appellant by asking him to count on his fingers, recite the alphabet, and stand on one leg, and appellant failed these tests. After Maylee read appellant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and placed him under arrest, Maylee and Suchland took appellant to the county jail at the Sheriff's department. At the jail, Maylee asked ap-

pellant questions. In his responses to the questions, appellant indicated that he had not been drinking or taking any medication, and that he was not driving the truck. Maylee then asked him to take a breathalyzer test, and he refused. The state subsequently charged appellant with willfully operating a motor vehicle while under the influence of alcohol.

During voir dire, appellant's trial counsel questioned the venire as follows:

 * * * * * *

[DEFENSE COUNSEL]: .... Is there anyone here that's gonna hold it against the defendant if he doesn't testify?

Miss Ignatowski?

VENIREMAN IGNATOWSKI: Uh-huh.

[DEFENSE COUNSEL]: Miss Niemeyer. Anybody else? ....

Later during the voir dire, appellant's trial counsel stated the following:

[DEFENSE COUNSEL]: Now I want to ask this phrase once again. Is there anybody other than Mr. Hinch and Miss Ignatowski and Mr. Serandos that thinks that the defendant has to testify?

Appellant's trial counsel moved to strike venireperson Niemeyer for cause because she: (1) indicated she would hold it against appellant if he did not testify; and (2) was crocheting during the entire voir dire and did not pay attention. The prosecution objected, and the trial court sustained the objection, noting that the court "did not hear any answer" from her concerning whether the appellant had to testify. Subsequently, venireperson Niemeyer served as a juror. Appellant raised the issue again in his motion for new trial, which the court overruled.

Prior to trial, appellant's trial counsel contacted Suchland to interview him about the arrest. Suchland refused to cooperate.

During the state's evidence, Maylee testified about the events leading up to and including the arrest and his subsequent questioning of appellant as recounted above. Subsequently, the state offered Suchland as a witness, and appellant did not object. Before Suchland started his testimony, the state of-

fered Maylee's report as evidence. Appellant objected to the offer of Maylee's report claiming that the information in the report regarding the field sobriety tests was excluded by his motion in limine and the report was inadmissible hearsay. The court sustained the objection on the grounds that information on field sobriety tests was excluded by the motion in limine, but rejected appellant's hearsay contention.

Suchland then testified and corroborated Maylee's testimony. Suchland stated that he was with Maylee from the time they saw appellant's truck to when Maylee took appellant to jail, and was five feet from appellant when he smelled the alcohol. During Suchland's direct examination testimony, appellant objected on the grounds that the only discovery regarding Suchland was that his name was listed as a rider in Maylee's report, Suchland was not endorsed as a witness until the morning before trial, and no statements or police reports filed by him were given to the defense during discovery, and thus, the defense did not know what his testimony would be. The trial court overruled the objection.

After Suchland finished testifying, the state offered Maylee's report with certain portions covered with white out, claiming that the edited report comported with appellant's motion in limine. The court allowed the edited report into evidence. The report is not a part of the record on appeal.

In his defense, appellant argued that he was involuntarily intoxicated due to his ingestion of Phenergan and Tylenol. After the close of all the evidence, the state offered a reasonable doubt instruction, patterned after MAI–CR3d 302.04, defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt," and the trial court submitted it to the jury. The state also offered an instruction defining intoxicated condition, patterned after MAI–CR3d 333.00, and the instruction was submitted to the jury, and stated:

### Instruction No. 7

Intoxicated condition means under the influence of alcohol, a controlled substance, or drug, or any combination thereof.

Appellant offered a burden of proof jury instruction, patterned after MAI–CR3d 310.52, and it was submitted to the jury, and stated:

### Instruction No. 8

You are instructed that an intoxicated condition whether from alcohol or drugs will not relieve a person of responsibility for his conduct unless such condition was involuntarily produced.

\* \* \* \* \* \*

The state has the burden of proving beyond a reasonable doubt that the defendant is not entitled to an acquittal by reason of an involuntary intoxicated or drugged condition. If you find that the defendant was in an involuntarily produced intoxicated or drugged condition which deprived the defendant of the capacity to know or appreciate the nature, quality, or wrongfulness of his conduct at the time of the offense submitted in these instructions or if you have a reasonable doubt whether he was in an involuntarily produced intoxicated or drugged condition which deprived the defendant of the capacity to know or appreciate the nature, quality, or wrongfulness of his conduct at the time of the offense submitted in these instructions, you must find the defendant not guilty.

\* \* \* \* \* \*

In his first point, appellant claims the trial court erred in failing to strike venireperson Niemeyer for cause. The trial court is accorded wide discretion in determining the qualifications of venirepersons, and its ruling on a challenge will not be disturbed absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Six*, 805 S.W.2d 159, 165[6] (Mo.banc 1991), cert. denied, 502 U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Because the trial court is better positioned to determine the qualifications of a venireperson than we are from the cold record, we resolve all doubts concerning the qualifications of a venireperson in the trial court's favor. *State v. Leisure*, 796 S.W.2d 875, 880[8] (Mo.banc 1990). The trial court has a

duty to independently examine the qualifications of a potential juror only when a venireperson gives an equivocal or otherwise uncertain answer concerning his or her ability to hear the evidence and adjudge the cause without bias or prejudice. *State v. Clemmons*, 753 S.W.2d 901, 907[4] (Mo.banc 1988).

Here, appellant claims that under *State v. Stewart*, 692 S.W.2d 295 (Mo.banc 1985), the trial court committed reversible error. In *Stewart*, the venireperson never unequivocally stated that she would draw no inference of guilt from defendant's failure to testify after stating she would hold it against him. *Id.* at 299[3]. The trial court did not independently question her and denied defendant's challenge for cause. *Id.* Our Supreme Court held that the trial court erred in failing to strike the venireperson. *Id.* Appellant asserts that here, venireperson Niemeyer also never unequivocally stated she would not infer guilt from defendant's failure to testify after initially stating she would have a problem with it. Further, the trial court never independently questioned her. Thus appellant claims that under *Stewart*, the trial court committed reversible error.

The record indicates, however, that venireperson Niemeyer did not give any answers about whether she would infer guilt if appellant did not testify. Instead, appellant's trial counsel mentioned her name after asking the panel whether they would hold it against appellant if he did not testify. The record also shows that later during voir dire, appellant's trial counsel did not include her name among those who would infer guilt if defendant did not testify. On the record, venireperson Niemeyer gave no equivocal answer regarding appellant not testifying, thus the trial court's duty to inquire did not arise. *See Clemmons*, 753 S.W.2d at 907[4]. In addition, because we must resolve any doubt in favor of the trial court, *Leisure*, 796 S.W.2d at 880[8], we will not speculate why appellant's trial counsel mentioned her name.

■ Appellant also maintains that the trial court erred in refusing to strike venireperson Niemeyer for cause because she paid little attention to the voir dire as she was crocheting the entire time. Appellant claims the trial court is obligated to consider the demeanor of the venireperson when considering a challenge for cause.

Here, we defer to the trial court's ability to observe the venireperson's demeanor. *See id.* In any event, there is no evidence in the record to indicate that she was not paying attention. Point denied.

■ In his second point, appellant contends that the trial court erred in overruling his objection to allowing Suchland to testify because statements of the witness were not provided to the appellant's trial counsel, and the witness was not endorsed until the morning of the trial. Under Rule 23.01(f), the court has discretion to permit the late endorsement of any material witness. *State v. Morris*, 650 S.W.2d 712, 714[1] (Mo.App. 1983). Absent an abuse of discretion or prejudice to the appellant, the conviction should not be overturned because a witness was endorsed on the day of trial. *Id.* at 714[2]. In exercising its discretion, the trial court should consider whether appellant waived his objection, whether the state intended to surprise or disadvantage appellant, whether appellant was actually surprised or disadvantaged, and whether the testimony could have been readily foreseen by appellant. *Id.* at 714[3].

Appellant argues that he was prejudiced by the late endorsement because counsel was unable to adequately investigate information about the witness. Specifically, because the state endorsed Suchland the morning of the trial, appellant claims he did not have time to collect information from which he could conduct an effective cross-examination. Appellant further argues that the state intended to disadvantage him by not providing him with a complete list of endorsed witnesses prior to the trial. Finally, although appellant claims in his point that the state's failure to provide statements of the witness violated his rights, he fails to explain how this failure actually violated his rights in the argument section of his brief.

Respondent asserts that appellant failed to make a timely objection to the admission of Suchland as a witness and thus failed to preserve the issue for appeal. Respondent claims that appellant did not make his objec-

tion until Suchland was over halfway into his testimony on direct examination.

 The proper time to object to a witness testifying is when he or she is offered as a witness, and failure to make the objection at this time precludes raising the issue on appeal. *Henty Construction Co., Inc. v. Hall*, 783 S.W.2d 412, 418[5] (Mo.App.1989).

Here, appellant objected to the offering of Suchland as a witness during Suchland's testimony. Thus, appellant's objection was not timely and he failed to preserve the issue for appeal.

Even assuming appellant properly preserved the issue, he was not prejudiced. The transcript indicates appellant's trial counsel acknowledged that Maylee's report listed Suchland as a rider in the police car, and that appellant obtained Maylee's report through discovery. Because Suchland was mentioned in the report, his testimony was readily foreseeable. In addition, appellant knew Suchland was present at appellant's arrest because appellant's trial counsel contacted Suchland prior to trial to ask him about the arrest. Thus, appellant cannot claim surprise or disadvantage.

We find support in *State v. Jones*, 854 S.W.2d 60 (Mo.App.1993). In *Jones*, defendant contended the trial court erred in allowing the late endorsement of a police officer, whose name was mentioned in the police report as one of the officers who responded to the radio call. *Id.* at 64[16]. Defendant had apparently obtained a copy of this report prior to trial. *Id.* at 64[17, 18]. The trial court also offered the defense as much as 24 hours to interview the officer in order to determine whether his testimony would be so prejudicial that the defendant could not proceed to trial. *Id.* In holding that defendant was not prejudiced, we reasoned that the police report had mentioned the officer and that defendant had the opportunity to discover whether she would be prejudiced by the witness. *Id.*

Here, appellant also had a police report mentioning the witness and had the opportunity to interview the witness. Although Suchland refused to cooperate when appellant questioned him, appellant could have

deposed him. Further, Suchland's testimony essentially corroborated Maylee's, and contained no significant difference. Point denied.

 In his third point, appellant contends that the trial court erred in overruling his objection to Suchland's testimony based on Maylee's report. A witness's testimony which relates to an out-of-court statement and is offered for the truth of the matter asserted constitutes hearsay. *State v. Clevenger*, 733 S.W.2d 782, 784 (Mo.App.1987).

Appellant contends that the trial court erred in allowing Suchland's testimony because it was based on Maylee's report. Appellant claims that Suchland did not have firsthand knowledge because he was only a rider in the patrol car, and he did not file a report. Appellant relies on *State v. Shigemura*, 680 S.W.2d 256 (Mo.App.1984). In *Shigemura*, defendant was charged with receiving stolen property. *Id.* at 257. A police officer apparently testified that an informant told him that the defendant possessed stolen property. *Id.* at 257[2]. The trial court did not give an instruction limiting how the jury could consider the officer's testimony. *Id.* at 257[3]. In reversing, we held that the officer's testimony was inadmissible hearsay because the jury could have inferred defendant's guilt from the informant's out-of-court statement. *Id.* at 257–258[3].

Here, appellant claims that Suchland's testimony was also based on Maylee's out-of-court statements found in Maylee's report. He also points out that the trial court did not limit the jury's application of his testimony. Appellant submits that under *Shigemura*, the court committed reversible error because the jury could have inferred appellant's guilt from Suchland's inadmissible hearsay.

The record indicates Suchland was with Maylee from the time they first saw appellant's truck to when Maylee brought him to jail. Moreover, Suchland was near appellant when he smelled alcohol. Unlike the officer in *Shigemura*, Suchland testified from his firsthand knowledge, and not on the basis of Maylee's out-of-court statements. The fact that Suchland did not file a police report is

irrelevant to whether he had firsthand knowledge. Point denied.

■ In his fourth point, appellant claims that the trial court plainly erred in submitting to the jury the instruction defining intoxicated condition, patterned after MAI–CR3d 333.00, because the instruction varied from the indictment resulting in a new and distinct offense. Appellant concedes that he did not preserve the matter for review.

Claims made for the first time on appeal are reviewed under plain error. Rules 29.-12(b), 30.20. "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20.

A variance is not conclusive to the question of whether there is reversible error. *State v. Lee*, 841 S.W.2d 648, 650[1] (Mo.banc 1992). It is necessary to determine whether the variance between the information and the instruction was material and whether the variance was prejudicial. *Id.* at 651[5]. A variance prejudices defendant only if defendant cannot adequately defend against the charges presented in the information and in the jury instructions. *Id.* at 650[3].

Appellant points out that the state filed an information alleging that appellant was driving while under the influence of "alcohol." The jury instruction defining intoxicated condition, however, stated that intoxicated condition means "under the influence of alcohol, a controlled substance, or drug or any combination thereof." Appellant claims that given the variance between the information and this instruction, he did not have the opportunity to prepare an adequate defense. Appellant contends he was prepared to defend himself with respect to being under the influence of alcohol, and he could not have anticipated that the state would attempt to prove that he was under the influence of "a controlled substance, or drug, or any combination thereof."

The record indicates, however, that appellant offered the burden of proof instruction, patterned after MAI–CR3d 310.52, describing an "intoxicated condition" as induced by "alcohol or drugs," and the trial court submitted it to the jury. Appellant cannot now claim that the instruction given by the state defining intoxication as induced by alcohol, a controlled substance, drugs, or any combination thereof represented a new charge. Further, appellant's defense was that he was involuntarily intoxicated due to his ingestion of prescription drugs. Thus, he defended himself against the charge of willfully driving while intoxicated with alcohol, a controlled substance, drugs, or in any combination thereof, and was not prejudiced by the variation. We hold the trial court did not plainly err in submitting the instruction defining intoxicated condition to the jury. Point denied.

■ In his fifth point, appellant contends that the trial court plainly erred in submitting an instruction patterned after MAI–CR3d 302.04, defining proof "beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Relying on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), appellant argues that the instruction improperly lowers the state's burden of proof in a criminal case, but concedes that this argument was rejected by our Supreme Court. *State v. Griffin*, 848 S.W.2d 464, 469[8] (Mo.banc 1993). We have also rejected this argument "too many times to mention." *State v. Roe*, 845 S.W.2d 601, 607 (Mo.App.1992).

Of interest, we note that the United States Supreme Court in *Estelle v. McGuire*, 502 U.S. ——, —— n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385, 399 n. 4 (1991) disapproved of the standard of review language in *Cage*, and reaffirmed the standard set out in *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Therefore the proper inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," *Boyde*, 494 U.S. at 380, 110 S.Ct. at 1198[4], 108 L.Ed.2d at 329, rather than "how reasonable jurors could have understood the charge as a whole." *Cage*, 498 U.S. at 41,

111 S.Ct. at 329[4], 112 L.Ed.2d at 342. Point denied.

Judgment affirmed.

GARY M. GAERTNER, C.J., and PUDLOWSKI, J., concur.